**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.:**

ALLIED VAN LINES, INC.,

     Plaintiff,

    v.                               **JURY TRIAL DEMANDED**

ALLIED VAN LINES MOVING AND
STORAGE, LLC and ZACKARY
SUDAKOFF,

     Defendants.

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Allied Van Lines, Inc. ("Allied"), for its complaint against Defendants Allied Van Lines Moving and Storage, LLC ("AVLMS") and Zackary Sudakoff, both as an individual and through his alter ego, Defendant AVLMS, states as follows:

**SUMMARY AND NATURE OF ACTION**

1.     In the moving industry, trust and reputation are paramount. For nearly a century, Allied has built a sterling reputation through honest service and quality care of customers' cherished possessions during one of life's most stressful experiences: a household move. Defendants Sudakoff and AVLMS have chosen a different path—deliberately hijacking Allied's trusted name and marks to deceive vulnerable consumers at a time when they're making significant life transitions. Operating as brokers without any actual moving assets or trucks, Defendants lure consumers with attractive quotes and Allied's good name, then typically arrange for third-party carriers who may hold customers' possessions hostage while demanding additional fees beyond the originally quoted price. This problem is so pervasive in the moving industry that the Federal

Motor Carrier Safety Administration ("FMCSA"), a division of the Department of Transportation, has established a specialized group dedicated to addressing such deceptive practices. Despite receiving multiple cease-and-desist letters over many months, Defendants doubled down on their deception, creating copycat websites, falsely claiming Allied's stellar reputation, and leaving a trail of deceived and dissatisfied customers who believed they were dealing with the legitimate Allied Van Lines. This brazen scheme not only has damaged Allied's hard-earned reputation but has also caused real harm to consumers who trusted the Allied name. Allied brings this action to stop Defendants' ongoing trademark infringement, protect consumers from further deception, and recover damages for the substantial harm inflicted by Defendants' calculated impersonation scheme.

## **PARTIES**

2.      Allied is a corporation that is incorporated in the State of Delaware and has its principal place of business at 101 East Washington Boulevard, Suite 1100, Fort Wayne, Indiana 46802. Allied offers full-service and customizable moving options. (https://www.allied.com/about-allied).

3.      Defendant Sudakoff is an individual engaged in the sale and advertisement of moving and relocation services wrongfully using Allied's trademarks through Defendant AVLMS. Upon information and belief, Defendant Sudakoff is a resident and citizen of Florida. Upon information and belief, Defendant Sudakoff is a co-owner and co-operator of https://alliedvanlinesmoving.com, https://alliedxpressmoving.com/, and https://tomato-cornet-treh.squarespace.com/ (the "Infringing Websites").

4.      Upon information and belief, Defendant AVLMS is a limited liability company formed under the laws of the State of Florida with a principal place of business in Boca Raton,

Florida. Upon information and belief, Defendant AVLMS is a co-owner and co-operator of the Infringing Websites.

## ALTER EGO ALLEGATIONS

5.     Upon information and belief, there exists, and at all times mentioned herein there existed, a unity of interest and ownership between Defendants such that any individuality and separateness between these Defendants has ceased. Defendant Sudakoff, among other things, (1) systematically created websites under the guise of at least one corporate shell with intent to deceive consumers, and (2) listed a residential address as the mailing address for Defendant AVLMS. Defendant Sudakoff has at all times exercised complete control and dominion over Defendant AVLMS with a disregard for the separate legal status of the entity in an attempt to profit off of Allied's intellectual property and defraud consumers. Defendant Sudakoff exercised such control to defraud consumers by holding AVLMS out as being authorized or otherwise affiliated with Allied and Allied's brand, which he knew to be false, to coax consumers into purchasing moving services at a specific price to move their personal belongings, and thereafter, withholding those personal belongings from the consumers until consumers paid far more than the agreed upon price.

6.     Adherence to the legal fiction of the separate existence of Defendant Sudakoff and Defendant AVLMS as distinct entities would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

7.     By way of this lawsuit, Allied seeks to pierce the corporate veil and hold the individual, Defendant Sudakoff, liable for the acts of his alter ego. Upon information and belief, Defendant Sudakoff held and now holds a substantial interest in Defendant AVLMS and should therefore be deemed to be using Defendant AVLMS as his alter ego. Upon information and belief, Defendant AVLMS was, and remains, a mere shell and naked framework that Defendant Sudakoff

used, and now uses, as a conduit for the conduct of his personal business affairs.

8.      Defendants, acting in concert and participation with each other, have induced, caused, and/or materially contributed to the promotion and sale of Defendants' moving and relocation services. With knowledge of these illegal activities, or with willful blindness, Defendants have financially benefitted therefrom. As such, Defendant Sudakoff is at least contributorily liable for the infringing activities described below.

9.      Upon information and belief, Defendant AVLMS is grossly undercapitalized. For example, the mailing address listed for Defendant AVLMS appears to be a residential address, which suggests that Defendant AVLMS lacks a commercial office space due to undercapitalization. This undercapitalization is consistent with Defendant AVLMS's operating merely as a broker that does not own moving trucks, employ movers, or maintain warehouse facilities—further evidence that AVLMS functions as the alter ego of Defendant Sudakoff rather than a legitimate, independent business entity.

## JURISDICTION AND VENUE

10.     These claims arise under the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. This Court has subject matter jurisdiction over the claims in this action that relate to trademark infringement, dilution, cybersquatting and false designations of origin and false descriptions under the provisions of 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

11.     This Court has supplemental jurisdiction over the claims in this complaint that arise under Florida state statutory and common law under 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

12.     Personal jurisdiction is proper under Fla. Stat. § 48.193. Upon information and

belief, Defendants co-registered, co-created, co-own and co-operate the Infringing Websites, which from time to time are accessible to consumers in Florida and bear unauthorized and infringing uses of Allied's federally registered trademarks. Upon information and belief, Defendants targeted Florida consumers by operating the infringing websites to advertise, sell and offer for sale moving and relocation services, which are accessible to consumers in the State of Florida. Upon information and belief, Defendants use the Infringing Websites to facilitate the promotion and sale of the moving and relocation services to Florida Consumers.

13.     Upon information and belief, these interactive websites are viewable to and have been accessed by consumers within the United States, including consumers within the State of Florida. At least one consumer living in the State of Florida purchased moving and relocation services from at least one of Defendants. Defendants have personally derived substantial revenue and should reasonably expect to continue receiving substantial revenue from the sale of moving and relocation through the Websites by purchasers throughout the United States, including purchases by Florida consumers.

14.     Defendants' conduct causes direct and indirect financial loss to Allied in Indiana where Allied maintain its principal place of business for U.S. sales operations. Defendants' conduct is also likely to engender confusion and dilution of Allied's federally registered trademark rights in Florida leading to the diminution of the value of and goodwill associated with these rights. Likewise, on information and belief, Defendants reside in the State of Florida.

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Allied's claims has occurred within this judicial district and a substantial part of the harm caused by Defendants has occurred in this judicial district.

## BACKGROUND COMMON TO ALL CLAIMS

### *Allied's World Famous Brand and Moving Services*

16.     Allied is a moving company that offers local, long-distance, and international moving services.

17.     For nearly a century, Allied has developed its reputation and distinctive image.

18.     Allied's origins date back to 1928 as a cooperative non-profit organization owned by its member agents to help with organizing return loads and minimizing dead-heading (i.e., operating trucks without shipments loaded on them). In 1968 it was reorganized as a standard public company.

19.     Allied has used a variety of legally protected trademarks, registered and unregistered, in commerce for many years (the "ALLIED Marks").

20.     For example, Allied uses the ALLIED Marks on its website, https://www.allied.com:







21.     As another example, Allied uses the ALLIED Marks on its moving trucks:



22.     Allied is the owner of numerous common-law trademarks and trademarks registered with the U.S. Trademark and Patent Office in connection with a wide array of goods and services. Some of Allied's U.S. registered trademarks are reflected in the table below, for which copies of the certifications are attached collectively as **Exhibit A**:

| U.S. Serial Number | Trademark | Registration Date | Services |
|---|---|---|---|
| 71557332 | ALLIED VAN LINES | September 27, 1949 | (039) transportation of household goods by motor vehicles |
| 72260808 |  | June 3, 1969 | (039) packing, storage, and transportation of goods |
| 73771666 |  | February 20, 1990 | |
| 74500674 | ALLIED | July 4, 1995 | (039) packing, warehousing, and transportation by trucks, ships, trains, and airplanes for others |
| 74593755 |  | February 20, 1996 | |
| 87010437 |  | March 7, 2017 | (035) Employee relocation; Moving and relocation services, namely, planning and project oversight of home moving for others; |
| 87010446 |  | March 7, 2017 | (039) Delivery of goods; Moving company services; Moving van services; Moving and storage of goods; Packing articles for transportation; Storage of goods; Transportation of goods; Transportation of household goods of others; Warehousing |

| U.S. Serial Number | Trademark | Registration Date | Services |
|---|---|---|---|
| 87578944 | ALLIED | July 24, 2018 | (016) Cardboard packaging boxes in collapsible form; Boxes of cardboard or paper; Packaging boxes of cardboard; Boxes of cardboard for use in moving furniture, clothing, and household items;
(035) Computerized international monitoring of shipment of goods for business purposes; Providing electronic tracking of freight information to others for business administration purposes; Employee relocation; Moving and relocation services, namely, planning and implementing moves of homes and offices; Relocation services for businesses; Providing information regarding customs clearance; transportation logistics services, namely, arranging the transportation of goods for others; transportation logistics services, namely, arranging the shipment of goods incidental to the transportation of household goods, personal effects, furniture, exhibits and displays, plant and office equipment; Freight logistics management; Freight management services, namely, shipment processing, preparing shipping documents and invoices, tracking documents, packages and freight over computer networks, intranets and the internet for business purposes;
(039) Packing and storage of goods services; Transportation of goods |
| 87583914 | ALLIED | August 21, 2018 | |

| U.S. Serial Number | Trademark | Registration Date | Services |
|---|---|---|---|
| | | | services; packing and packaging of goods for transportation; household and commercial moving company services; transportation of goods by truck, van, rail, air and ocean carrier; Distribution services, namely, delivery of commercial freight; specialized transport of fragile goods; logistics, namely, supply chain logistics and reverse logistics services, namely, storage, transportation and delivery of goods for others by air, rail, ship or truck; warehousing and storage of goods; freight forwarding and brokerage services; Transportation of household goods, personal effects, furniture, exhibits and displays, plant and office equipment, and packing and storing goods incidental to such transportation; Global transportation of freight for others by all available means; Moving and storage of goods; Moving company services; Moving van services; Transport services, namely, local, national and international moving services; <br><br> (042) Providing temporary use of on-line non-downloadable software that allows users to track and manage shipments, transportation, warehousing, and storage of household goods, fragile goods, exhibits and displays, and freight being moved by truck, van, rail, air, and ocean carrier; Providing temporary use of on-line non-downloadable software for the collection, editing, |

| U.S. Serial Number | Trademark | Registration Date | Services |
|---|---|---|---|
| | | | organizing, modifying, book marking, transmission, storage and sharing of data and information for use in real time pricing, training, and lead tracking in connection with relocation and moving services; Providing temporary use of on-line non-downloadable software for customers, namely, to provide information about the relocation or moving process and manage the work flow of the relocation process related to selling the prior home, purchasing a home, making temporary living arrangements including rental of a home, expense management, moving of household goods and home sale closings |
| 87582317 | | August 14, 2018 | (039) Packing and storage of goods services; Transportation of goods services; packing and packaging of goods for transportation; household and commercial moving company services; transportation of goods by truck, van, rail, air and ocean carrier; Distribution services, namely, delivery of commercial freight; specialized transport of fragile goods; logistics, namely, supply chain logistics and reverse logistics services, namely, storage, transportation and delivery of goods for others by air, rail, ship or truck; warehousing and storage of goods; freight forwarding and brokerage services; Transportation of household goods, personal effects, furniture, exhibits and |

| U.S. Serial Number | Trademark | Registration Date | Services |
|---|---|---|---|
| | | | displays, plant and office equipment, and packing and storing of goods incidental to such transportation; Global transportation of freight for others by all available means; Moving and storage of goods; Moving company services; Moving van services; Transport services, namely, local, national and international moving services |

23.   Allied has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the ALLIED Marks. As a result, services advertised and sold using the ALLIED Marks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality services sourced from Allied.

24.   Allied has long been advertising and selling, in interstate commerce, moving and relocation services under the ALLIED Marks. Each of the registrations above are valid and subsisting and each have attained incontestable status.

25.   The registration of each of the marks constitutes prima facie evidence of their validity and conclusive evidence of Allied's exclusive right to use the ALLIED Marks in connection with the services identified therein and other commercial services.

26.   The registration of the marks also provides constructive notice to Defendants of Allied's exclusive rights in the ALLIED Marks.

27.   The ALLIED Marks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

28.   The ALLIED Marks at issue in this case have been continuously used in interstate

commerce and have never been abandoned.

29.     Allied sells and markets its services directly to consumers through its exclusive authorized Agent network and its website https://www.allied.com/, which receives substantial views from consumers in Florida. Allied, including its authorized Agent network, currently operate facilities on six continents spanning over 80 countries, including the United States, where it has facilities and/or Agent locations in every state, including Florida, and six locations in this judicial district alone. (https://www.allied.com/international-moving-company/locate-representative.)

30.     Allied is the exclusive licensor in the United States of its services, the licensees of which all are expressly authorized by Allied to use marketing that includes one or more of Allied's federally registered trademarks (as defined herein).

31.     In January 2020, Allied was recognized as one of America's Best Customer Service Providers.   (https://www.businesswire.com/news/home/20200108005020/en/Allied-Van-Lines-Recognized-Newsweek-Americas-Customer.) In July 2020, Allied received the 37th Annual Quest for   Quality   Awards   recognition   from   Logistics   Management. (https://www.businesswire.com/news/home/20200108005020/en/Allied-Van-Lines-Recognized-Newsweek-Americas-Customer.) In November 2024, Allied was recognized as one of the top moving companies in California. (https://www.cnn.com/cnn-underscored/home/best-moving-companies-california.) In 2024, Allied won its 10th Women's Choice Award in 11 years. (https://www.obriens-moving.com/blog/p.241223000/allied-van-lines-wins-the-womens-choice-award-again/.)

### Defendant Sudakoff Forms Defendant AVLMS to Mislead Innocent Consumers

32.     Upon information and belief, Defendant Sudakoff formed Defendant AVLMS as a Florida limited liability company on July 17, 2023, as evidenced by the Articles of Organization

filed with the Florida Secretary of State (attached as **Exhibit B**). Defendant Sudakoff is listed as the registered agent, with a principal office address of 2255 Glades Road, Boca Raton, Florida 33431, and a mailing address of 6710 Royal Orchid Circle, Delray Beach, Florida 33446. By electronically signing the Articles of Organization, Defendant Sudakoff expressly agreed to "comply with the provisions of all statutes relating to the proper and complete performance of my duties" as registered agent. Upon information and belief, prior to filing these Articles, Defendant Sudakoff had actual and/or constructive knowledge of Allied's trademark rights.

33.     Upon information and belief, Defendant Sudakoff is the President of and holds a direct financial interest in Defendant AVLMS. **Exhibit C** (https://www.bbb.org/us/fl/boca-raton/profile/moving-brokers/allied-van-lines-moving-and-storage-llc-0633-92042386).

34.     Upon information and belief, prior to filing the Articles of Organization, Defendant Sudakoff had actual and/or constructive knowledge of Allied's trademark rights.

***Defendants Create ALLIEDXPRESSMOVING.COM***

35.     Upon information and belief, on or around September 14, 2023, Defendant AVLMS and Defendant Sudakoff purchased, registered, created, and/or took ownership, and/or Defendant Sudakoff directed Defendant AVLMS to register, purchase, create and/or take ownership of the domain name ALLIEDXPRESSMOVING.COM. **Exhibit D.**

36.     Upon information and belief, prior to obtaining the ALLIEDXPRESSMOVING.COM domain, Defendant AVLMS and Defendant Sudakoff had actual and/or constructive knowledge of Allied's trademark rights.

37.     Upon information and belief, prior to obtaining the ALLIEDXPRESSMOVING.COM domain, Defendant AVLMS and Defendant Sudakoff had actual and/or constructive knowledge that they lacked a license or other authority to use any of

Allied's trademark rights.

38.     Upon information and belief, Defendant AVLMS and Defendant Sudakoff registered and/or obtained the ALLIEDXPRESSMOVING.COM domain with the intent to benefit from Allied's trademark rights.

39.     Upon information and belief, Defendant AVLMS and/or Defendant Sudakoff control the operation of the ALLIEDXPRESSMOVING.COM domain.

40.     Upon information and belief, the webpages associated with the ALLIEDXPRESSMOVING.COM domain, from time to time include one or more of the ALLIED Marks in their entirety to advertise and sell moving and relocation services.

41.     Upon information and belief, Defendant AVLMS and/or Defendant Sudakoff caused the webpages associated with the ALLIEDXPRESSMOVING.COM domain to include one or more of the ALLIED Marks in their entirety.

42.     The URL for the ALLIEDXPRESSMOVING.COM domain consists of one or more of the ALLIED Marks in their entirety.

### Allied Notices Defendants' Misconduct and Demands
### They Stop Their False, Misleading, and Infringing Conduct

43.     On September 21, 2023, Sirva, the parent company to Allied, mailed a cease and desist letter to 2255 Glades Rd., Boca Raton, FL 3341, addressed to Defendant AVLMS, attention of Defendant Sudakoff, President/Owner ("September 21, 2023 Letter"). A true and correct copy of the September 21, 2023 Letter is attached as **Exhibit E.**

44.     The September 21, 2023 Letter states that Sirva is the parent company of Allied Van Lines, Inc. The September 21, 2023 Letter explains that Defendant AVLMS is wrongfully representing itself to consumers as Allied Van Lines, Inc. and that such acts constitute commission of unfair methods of competition, unfair and deceptive acts affecting commerce, and trademark

infringement. The letter explains that Allied owns various trademark rights, and that Defendants are acting in violation of those rights. The letter notes that Allied has received multiple complaints from consumers that have been deceived by Defendants to believe that Defendant AVLMS is associated with or authorized by Allied.

45.     The September 21, 2023 Letter includes a screen capture of a Yelp webpage for an "Allied      Van      Lines"      as      an      enclosure      (https://www.yelp.com/biz/allied-vanlines-houston?osq=allied+van+lines&override_cta=Get+pricing+%26+availability).      Moreover,      the Yelp Webpage does not include contact information for Allied Van Lines, Inc.



46.     Upon information and belief, Defendant Sudakoff created—or caused to be created—the Yelp webpage evidenced by the September 21, 2023  Letter.

47.     The reviews associated with the Yelp webpage evidenced by the September 21, 2023 Letter indicate that multiple consumers had a poor experience with "Allied Van Lines" due to poor customer service, damage to goods during the moving process, delayed delivery, failure to provide refunds for insufficient service, having their number blocked by "Allied Van Lines," and dishonesty, including multiple "lie[s]" told by company representatives.

48.     Upon information and belief, individuals that have sought out moving and/or relocation services from Defendant AVLMS were misled into believing that Defendant AVLMS was and/or is associated with Allied.

49.     The September 21, 2023 Letter points out that Sirva does not have a license (nor an Agent) agreement with Defendant AVLMS and accordingly requests that Defendant AVLMS immediately cease and desist using any and all references to Allied.

### Defendants Continue Their Attempts to
### Confuse Innocent Consumers and Create ALLIEDVANLINESMOVING.COM

50.     Upon information and belief, on or around September 24, 2023, Defendant AVLMS and Defendant Sudakoff registered, purchased, created, and/or took ownership, and/or Defendant Sudakoff directed Defendant AVLMS to register, purchase, create and/or take ownership of the domain name ALLIEDVANLINESMOVING.COM. **Exhibit F.**

51.     Upon information and belief, prior to obtaining the ALLIEDVANLINESMOVING.COM domain, Defendant AVLMS and Defendant Sudakoff had actual and/or constructive knowledge of Allied's trademark rights.

52.     Upon information and belief, prior to obtaining the ALLIEDVANLINESMOVING.COM domain, Defendant AVLMS and Defendant Sudakoff had

17

actual and/or constructive knowledge that they lacked a license or other authority to use any of Allied's trademark rights.

53. Upon information and belief, Defendant AVLMS and Defendant Sudakoff obtained the ALLIEDVANLINESMOVING.COM domain with the intent to benefit from Allied's trademark rights.

54. Upon information and belief, Defendant AVLMS and/or Defendant Sudakoff control the operation of the ALLIEDXPRESSMOVING.COM domain.

55. The webpages associated with the ALLIEDVANLINESMOVING.COM domain, from time to time, include one or more of the ALLIED Marks in their entirety that are used to advertise and sell moving and relocation services (**Exhibit G**):



56.     Upon information and belief, Defendant AVLMS and/or Defendant Sudakoff caused the webpages associated with the ALLIEDVANLINESMOVING.COM domain to include one or more of the ALLIED Marks in their entirety.

57.     The URL for the ALLIEDVANLINESMOVING.COM domain consists of one or more of the ALLIED Marks in their entirety.

### Allied Discovers Defendants' Shell Game and Sends Another Letter

58.     On November 2, 2023, Sirva mailed a cease and desist letter to 6710 Royal Orchid Circle, Delray Beach, Florida 33446 addressed to Defendant AVLMS ("November 2, 2023 Letter"). A true and correct copy of the November 2, 2023 Letter is attached as **Exhibit H.**

59.     The letter dated November 2, 2023, states that Sirva is the parent company of Allied Van Lines, Inc. It explains that Defendant AVLMS is wrongfully representing itself as Allied Van Lines, Inc. to consumers, which constitutes unfair methods of competition, unfair and deceptive acts affecting commerce, and trademark infringement. The letter further points out that Sirva does not have a license (nor an Agent) agreement with Defendant AVLMS and requests that Defendant AVLMS immediately cease and desist from using any references to Allied.

60.     The November 2, 2023 Letter expressly references and includes a copy of the September 21, 2023 Letter, which is omitted from **Exhibit H**.

### And Another Letter

61.     On February 8, 2024, Sirva mailed a cease and desist letter to 6710 Royal Orchid Circle, Delray Beach, Florida 33446 addressed to Defendant AVLMS ("February 8, 2024 Letter"). A true and correct copy of the February 8, 2024 Letter is attached as **Exhibit I.**

62.     The February 8, 2024 Letter expressly references and includes copies of the September 21, 2023 Letter and the November 2, 2023 Letter, which are omitted from **Exhibit I**.

63.     The letter dated February 8, 2024, explains that Defendant AVLMS is wrongfully representing itself as Allied Van Lines, Inc. to consumers, which constitutes unfair methods of competition, unfair and deceptive acts affecting commerce, and trademark infringement. It further states that Allied owns various trademark rights, which Defendants are violating. As noted in the letter, Allied has received multiple complaints from consumers who were deceived into believing that Defendant AVLMS is associated with or authorized by Allied. The letter also points out that Sirva does not have a license (nor an Agent) agreement with Defendant AVLMS and requests that Defendant AVLMS immediately cease and desist from using any references to Allied.

### *Yet More Letters*

64.     On May 16, 2024 Sirva mailed cease and desist letters to Defendant AVLMS, attention Defendant Sudakoff, President, at the addresses 2255 Glades Road, Suite 319A, Boca Raton, Florida 33431 and 6710 Royal Orchid Circle, Delray Beach, Florida 3346 ("May 16, 2024 Letters"). The May 16, 2024 Letters expressly reference and include a copy of the September 21, 2023 Letter. True and correct copies of the May 16, 2024 Letters are attached as **Exhibit J (Boca Raton)** and **Exhibit K (Delray Beach)**, respectively.

65.     The May 16, 2024 Letters explain that Defendant AVLMS continues to wrongfully represent itself as Allied to consumers, which constitutes unfair methods of competition, unfair and deceptive acts affecting commerce, and trademark infringement.

66.     The May 16, 2024 Letters further explain that Defendant AVLMS is wrongfully representing itself as Allied Van Lines, Inc. to consumers, particularly through its ownership and/or operation of www.ALLIEDVANLINESMOVING.COM. These acts constitute unfair methods of competition, unfair and deceptive acts affecting commerce, and trademark infringement. As noted in the letters, Allied has received multiple complaints from consumers who

were deceived into believing that Defendant AVLMS is associated with or authorized by Allied. The letters further state that Allied owns various trademark rights, which Defendants are violating. Additionally, the letters point out that Sirva does not have a license (nor an Agent) agreement with Defendant AVLMS and request that Defendant AVLMS immediately cease and desist from using any references to Allied.

### *Another Letter Still*

67.     On July 3, 2024 Sirva mailed cease and desist letters to Defendant AVLMS, attention Zackary Defendant Sudakoff, President,  to the addresses 2255 Glades Road, Suite 319A, Boca Raton, Florida 33431 and to 6710 Royal Orchid Circle, Delray Beach, Florida 33446 ("July 3, 2024 Letters"). The July 3, 2024 Letters expressly reference and include copies of the May 16, 2024 Letter, the February 8, 2024 Letter, the November 2, 2023 Letter, and the September 21, 2023 Letter. A true and correct copy of the July 3, 2024 Letters are attached as **Exhibit L (Boca Raton)** and **Exhibit M (Delray Beach).**

68.     The July 3, 2024 Letters reiterate the points made in the prior letters, again explaining that Allied owns various trademark rights, that Defendants are acting in violation of those rights, and requesting that Defendant Sudakoff and his company cease and desist using any and all references to Allied.

### *One More Letter*

69.     On August 26, 2024, outside counsel for Sirva and Allied mailed a cease and desist letter to Defendant AVLMS, addressed to Zackary Sudakoff, President, at 2255 Glades Road, Suite 319A, Boca Raton, Florida 33431, and 6710 Royal Orchid Circle, Delray Beach, Florida 33446 ("August 26, 2024 Letter"). The August 26, 2024 Letter expressly references and includes copies of the letters dated September 21, 2023; November 2, 2023; February 8, 2024; May 16, 2024; and

July 3, 2024. A true and correct copy of the August 26, 2024 Letter is attached as **Exhibit N**.

70.     The August 26, 2024 Letter explains that Allied owns at least 10 federal trademark registrations, which are expressly identified within the letter.

71.     Moreover, the August 26, 2024 Letter further explains that Defendant Sudakoff filed articles of organization for AVLMS decades after the ALLIED Marks became well established.

72.     The August 26, 2024 Letter elaborates that Defendant Sudakoff and Defendant AVLMS, at his direction, engaged in at least the following actions that violate Allied's trademark rights:

   a. On at least September 17, 2023, Defendant AVLMS made posts on Facebook showing use of the name "Allied Van Lines."

   b. On at least May 16, 2024, the ALLIEDVANLINESMOVING.COM webpage displayed extensive use of the "Allied Van Lines" name and branding with increasing similarity to the registered Allied marks.

   c. On at least dated July 31, 2024 and August 23, 2024, the ALLIEDVANLINESMOVING.COM webpage displayed the name "Allied Van Lines" and branding that includes the addition of extensive use of the color orange.

   d. The ALLIEDVANLINESMOVING.COM website from time to time displays unverified claims of a customer satisfaction rating of 98%.

   e. Defendant AVLMS's Instagram page from time to time displays the logo found on Facebook and the logo found on the website. The logos are confusing similar to one or more of the ALLIED Marks.

   f. The privacy policy of ALLIEDVANLINESMOVING.COM, effective July 17,

2023 (though notably not available online at the time of the supposed effective date), indicates the collection of information under the name "Allied Van Lines," including under California's CCPA and the European Union's GDPR. Despite this, Defendant AVLMS has failed to comply with either regulation, with violations including, but not limited to, the failure to provide a toll-free contact number for violations, instructions on how to exercise data privacy rights, and the incorrect definition of personal information as "non-personally identifiable."

73.     Defendant Sudakoff and Defendant AVLMS have persistently engaged in "whack-a-mole" tactics to evade Allied's enforcement efforts. Each time Allied has succeeded in taking down one infringing website or social media account, Defendants have promptly created new ones, as evidenced by their creation of ALLIEDXPRESSMOVING.COM, ALLIEDVANLINESMOVING.COM, and most recently TOMATO-CORNET-TREH.SQUARESPACE.COM. Rather than comply with Allied's multiple cease and desist letters spanning from September 2023 to August 2024, Defendants have escalated their infringement by creating increasingly similar copies of Allied's branding and marks, demonstrating a persistent pattern of bad faith and willful infringement.

74.     As explained in the letter, Defendant Sudakoff and Defendant AVLMS, at his direction, used trademarks that are identical or confusingly similar to the ALLIED Marks as well as created colorable imitations of the same.

75.     The August 26, 2024 Letter explains that this conduct is willful and has increased over time during the course of receiving cease and desist letters from Sirva (and by extension its subsidiaries).

76.     The letter also explains why Defendant Sudakoff and Defendant AVLMS's conduct

is wrongful and constitutes infringement, and how Defendant Sudakoff has repeatedly used, Defendant AVLMS, "alter ego" by using the company to perpetuate fraud and intentionally mislead consumers, both before and after being notified of instances of actual confusion.

### *Defendants Continue to Trick and Abuse Innocent Consumers, Causing Irreparable Harm to Allied's Brand and Reputation*

77.     On or about August 23, 2024, an unnamed consumer lodged a complaint with the Better Business Bureau appearing to allege that Defendant AVLMS misrepresented its true identity to the consumer and coaxed the consumer into signing a contract. **Exhibit O** (BBB).

78.     Upon information and belief, Defendant Sudakoff and/or Defendant AVLMS own and/or control the email address domain ALLIEDVANLINESMOVING.COM. **Exhibit D** (Email Chain).

79.     Upon information and belief, Defendant Sudakoff and/or Defendant AVLMS caused and/or carried out the registration and/or creation of the email address domain ALLIEDVANLINESMOVING.COM. **Exhibit D** (Email Chain) .

80.     Upon information and belief, prior to obtaining ownership and/or control of the ALLIEDVANLINESMOVING.COM email address domain, Defendant AVLMS and Defendant Sudakoff had actual and/or constructive knowledge of Allied's trademark rights.

81.     Upon    information    and    belief,    prior    to    obtaining    the ALLIEDVANLINESMOVING.COM, Defendant AVLMS and Defendant Sudakoff had actual and/or constructive knowledge that they lacked a license or other authority to use any of Allied's trademark rights.

82.     Upon information and belief, Defendant AVLMS and Defendant Sudakoff obtained the ALLIEDVANLINESMOVING.COM email address domain with the intent to benefit from Allied's trademark rights.

83.     Upon information and belief, Defendant AVLMS and/or Defendant Sudakoff have used and currently use the ALLIEDVANLINESMOVING.COM email address domain.

84.     Upon information and belief, Defendant AVLMS and/or Defendant Sudakoff induced and induces others to use the "ALLIEDVANLINESMOVING.COM" email address domain such as for example by creating email addresses using the email address domain. **Exhibit D** (Email Chain).

85.     On or around September 9, 2024, Defendant Sudakoff and/or Defendant AVLMS caused and/or engaged in an email exchange with at least one consumer using the ALLIEDVANLINESMOVING.COM email address domain, wherein the email exchange, indicated that the sender of the email was acting on behalf of "Allied Van Lines Moving and Storage," and advertised moving and relocation services. **Exhibit P** (Email).

86.     On or around September 18, 2024, as part of the email exchange, an email from "movingspecialist@alliedvanlinesmoving.com" indicated that the email address was associated with ALLIEDXPRESSMOVING.COM. **Exhibit P** (Email Chain).

87.     On or around September 18, 2024, as part of the email exchange, an email from "movingspecialist@alliedvanlinesmoving.com," included a quote of $20,222.56 for moving services to a consumer that Defendant Sudakoff and/or Defendant AVLMS caused to be provided. **Exhibit P** (Email Chain).

88.     Upon information and belief, the consumer engaged Defendant Sudakoff and/or Defendant AVLMS for moving services.

89.     Upon information and belief, the consumer was displeased with the services provided, or lack thereof.

90.     Upon information and belief, consumers purchased moving services from one or

more of Defendants with the understanding that Defendant AVLMS was associated with Allied.

91.     On or about September 12, 2024, an unnamed consumer lodged a complaint with the Better Business Bureau appearing to allege that Defendant AVLMS provided multiple estimates to the consumer that increased over time up to over $5000. The consumer referenced a need to "cancel the move with AVL immediately." **Exhibit O** (BBB)

92.     Upon information and belief, the unnamed consumer believed Defendant AVLMS to be associated with Allied.

### *Allied Shuts Down Misleading ALLIEDVANLINESMOVING.COM, But Defendants Refuse To Stop*

93.     Around October 2024, Allied expended resources to send the last of numerous takedown requests to the service provider of the ALLIEDVANLINESMOVING.COM domain, which was ultimately successful in removing the content from the landing pages to the domain. Nevertheless, the domain name remains in the possession of Defendant AVLMS and/or Defendant Sudakoff.

94.     On or about October 1, 2024, an unnamed consumer lodged a complaint with the Better Business Bureau appearing to allege that the consumer had a poor experience with Defendant AVLMS because consumer was unable to contact Defendant AVLMS after engaging them for moving services. **Exhibit O** (BBB)

95.     On or about November 11, 2024, an unnamed consumer lodged a complaint with the Better Business Bureau appearing to allege that Defendant AVLMS continuously increased the cost over time. The consumer noted that they "called Allied, and the whole conversation returned to how much extra stuff was in the unit," which the consumer fiercely contested. **Exhibit O** (BBB)

96.     Upon information and belief, the unnamed consumers believed Defendant AVLMS

to be associated with Allied.

97.     On or around February 24, 2025, Sirva received a complaint from a consumer alleging that Defendant AVLMS has been misrepresenting itself as Allied and advertising and providing moving services to consumers using those brand misrepresentations. The consumer indicated that he purchased those moving services from Defendant AVLMS and had a terrible experience. According to the consumer, Defendant AVLMS unexpectedly increased the pricing of the moving services over time and eventually engaged in conduct that made it difficult for the consumer to obtain his belongings.

98.     The instances of actual confusion described above are particularly harmful because of how Defendants operate. On information and belief, as brokers rather than actual carriers, Defendants do not own trucks or employ movers—they merely arrange transportation through third parties while marketing themselves using Allied's established name and reputation. When consumers subsequently experience poor service, delays, damaged goods, or unexpectedly increased prices—all common tactics in these operations—they attribute these negative experiences to Allied.  Allied has established through decades of quality service that customers can trust their possessions to Allied's care, but Defendants' deceptive use of Allied's marks has caused considerable damage to Allied's hard-earned reputation and goodwill.

### *Defendants Create Misleading Webpages through a Different Domain*

99.     Upon information and belief, Defendant AVLMS and Defendant Sudakoff purchased, registered, created, and/or took ownership, and/or Defendant Sudakoff directed Defendant AVLMS to register, purchase, create and/or take ownership of the domain name TOMATO-CORNET-TREH.SQUARESPACE.COM.

100.    Upon information and belief, prior to obtaining the TOMATO-CORNET-

TREH.SQUARESPACE.COM domain, Defendant AVLMS and Defendant Sudakoff had actual and/or constructive knowledge of Allied's trademark rights.

101.    Upon information and belief, prior to obtaining the TOMATO-CORNET-TREH.SQUARESPACE.COM domain, Defendant AVLMS and Defendant Sudakoff had actual and/or constructive knowledge that they lacked a license to any of Allied's trademark rights.

102.    Upon information and belief, Defendant AVLMS and Defendant Sudakoff obtained the TOMATO-CORNET-TREH.SQUARESPACE.COM domain with the intent to benefit from Allied's trademark rights.

103.    Upon information and belief, Defendant AVLMS and/or Defendant Sudakoff control the operation of the TOMATO-CORNET-TREH.SQUARESPACE.COM domain.

104.    The webpages associated with the TOMATO-CORNET-TREH.SQUARESPACE.COM domain, from time to time include one or more of the ALLIED Marks in their entirety to advertise for moving and relocation services (**Exhibit Q**):





105.     Upon information and belief, following the takedown of the content at the ALLIEDVANLINESMOVING.COM domain (**Exhibit G**), Defendant AVLMS and/or Defendant Sudakoff copied the information from webpages associated with the ALLIEDVANLINESMOVING.COM domain, and used said information to populate the webpages associated with the TOMATO-CORNET-TREH.SQUARESPACE.COM domain.

106.     Upon information and belief, Defendant AVLMS and/or Defendant Sudakoff caused the webpages associated with the TOMATO-CORNET-TREH.SQUARESPACE.COM to include one or more of the ALLIED Marks in their entirety.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114**

107.     Allied repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

108.     The ALLIED Marks are inherently distinctive marks and associated in the mind of the public with Allied.

109.     Based on Allied's extensive advertising, sales, and the wide popularity of Allied's

services, the ALLIED Marks are strong and have also acquired secondary meaning so that any advertisement bearing the ALLIED Marks is immediately associated by purchasers and the public as being a service of or affiliated with Allied.

110.    Defendants have used and continue to use the ALLIED Marks in connection with Defendants' sale and advertising of Defendants' moving and relocation services.

111.    Defendants' activities constitute Defendants' use in commerce of the ALLIED Marks.

112.    Defendants have used and continue to use the ALLIED Marks without Allied's consent or authorization. Defendants' use, including the sale and advertisement of Defendants' moving and relocation services in connection with the ALLIED Marks, has caused and is likely to cause confusion and mistake in the minds of consumers to believe that Defendants' services and advertisements concerning the same, are associated, affiliated, or connected with Allied's ALLIED Marks, in violation of 15 U.S.C. § 1114.

113.    Defendants' use of the ALLIED Marks is with full knowledge of the falsity of such association, affiliation, or connection, all to the detriment of Allied. Defendants' activities create the false and misleading impression that Defendants are sanctioned, assigned, or authorized by Allied to use the ALLIED Marks to advertise, offer for sale or sell Defendants' services using the ALLIED Marks when Defendants are not so authorized.

114.    Defendants' conduct is intended to exploit the goodwill and reputation associated with the ALLIED Marks. This exploitation is particularly willful and harmful given the industry context where consumers are vulnerable during stressful relocation periods and where numerous consumers have already been misled into believing they were engaging Allied's services. Defendants' persistence in creating new infringing websites after receiving multiple cease and

desist letters and after takedown actions against their previous sites demonstrates deliberate, ongoing bad faith.

115.     Defendants' unauthorized use of the ALLIED Marks as set forth above has resulted in Defendants unfairly benefiting from Allied's advertising and promotion. Defendants continue to profit from Allied's reputation and the ALLIED Marks, to the substantial and irreparable injury of the public, Allied and the ALLIED Marks, and the substantial goodwill represented thereby.

116.     Defendants' wrongful acts will continue unless enjoined by this Court.

117.     Allied has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of Defendants in an amount thus far not determined.

118.     Upon information and belief, Defendants have obtained gains, profits, and advantages as a result of their wrongful acts in an amount thus far not determined.

119.     Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**SECOND CAUSE OF ACTION**
**FALSE DESIGNATIONS OF ORIGIN,**
**FALSE DESCRIPTIONS AND REPRESENTATIONS**
**15 U.S.C. § 1125(a)**

120.     Allied repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

121.     Defendants have, in connection with their services, used in commerce, and continues to use in commerce, the ALLIED Marks, which tend falsely to describe the origin, sponsorship, association or approval by Allied, of the moving and relocation services sold and offered for sale by Defendants, despite repeated requests from Allied to stop such use.

122.     Defendants' use of the ALLIED Marks is with full knowledge of the falsity of such designations of origin, descriptions, and representations, all to the detriment of Allied.

123.     Defendants' use of the ALLIED Marks in connection with the sale and advertising of Defendants' moving and relocation services constitutes false descriptions and representations tending to falsely describe or represent Defendants and their services as being authorized, sponsored, affiliated, or associated with Allied.

124.     Defendants' use of the ALLIED Marks in connection with the sale and advertising of Defendants' moving and relocation services misleads the purchasing public and is intended to trade upon the high-quality reputation of Allied and to improperly appropriate to themselves the valuable trademark rights of Allied.

125.     Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Defendants' moving and relocation services as those of Allied in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

126.     Defendants' wrongful acts will continue unless enjoined by this Court.

127.     Allied has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of Defendants in an amount thus far not determined.

128.     Upon information and belief, Defendants have obtained gains, profits, and advantages as a result of their wrongful acts in an amount thus far not determined.

### THIRD CAUSE OF ACTION
### FEDERAL TRADEMARK DILUTION
### 15 U.S.C. § 1125(c)

129.     Allied repeats and reallege the allegations of the previous paragraphs as though fully set forth herein.

130.     Allied is the exclusive owner of the ALLIED Marks as seen in **Exhibit A**.

131.     Defendants' use of the ALLIED Marks in connection with the sale and advertising of Defendants' moving and relocation services constitutes use in commerce of the ALLIED Marks.

132.     The ALLIED Marks have been used for decades, and are so globally recognized and associated with Allied as the source of certain moving and relocation services that the ALLIED Marks are entitled to be recognized as famous and distinctive under 15 U.S.C. §1125(c). Allied's ALLIED Marks achieved fame prior to Defendants' wrongful acts described in this complaint.

133.     The ALLIED Marks are inherently distinctive and/or have acquired secondary meaning in the marketplace, uniquely identifying Allied as the source of services bearing these marks. Allied has established substantial goodwill and reputation for high-quality services in connection with the ALLIED Marks. Defendants' unauthorized use of identical or confusingly similar marks in connection with moving and relocation services is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, affiliation, or approval of Defendants' services. Consumers are likely to erroneously believe that Defendants' services originate from, are authorized by, or are otherwise connected with Allied, thereby causing irreparable harm to Allied's reputation and goodwill.

134.     Allied has not authorized or licensed the use of the ALLIED Marks to Defendants.

135.     Defendants' unauthorized use of the ALLIED Marks in their marketing, sale, and distribution of Defendants' moving and relocation services dilutes the distinctive quality of the ALLIED Marks and the goodwill associated with it in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c).

136.     Such conduct has injured Allied and said injury will continue unless the Court enjoins Defendants from committing further wrongful acts.

137.     Upon information and belief, Defendants intentionally and willfully used the ALLIED Marks to trade on Allied's reputation and goodwill.

138.     Allied has no adequate remedy at law and is suffering irreparable harm and damage

as a result of the acts of Defendants in an amount thus far not determined.

139.    Upon information and belief, Defendants have obtained gains, profits, and advantages as a result of their wrongful acts in an amount thus far not determined.

**FOURTH CAUSE OF ACTION**
**CYBERSQUATTING UNDER THE ANTI-CYBERSQUATTING CONSUMER**
**PROTECTION ACT 15 U.S.C. § 1125(d)**

140.    Allied repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

141.    The ALLIED Marks are inherently distinctive and/or achieved distinctiveness prior to Defendants' registering ALLIEDVANLINESMOVING.COM and ALLIEDXPRESSMOVING.COM ("Infringing Domains") and prior to Defendants undertaking their infringing acts.

142.    The names of the Infringing Domains are confusingly similar to the ALLIED Marks.

143.    Defendants registered and used the Infringing Domains to profit from the ALLIED Marks by advertising Defendants' moving and relocation services through the Infringing Domains and creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' websites and Defendants' moving and relocation services by Allied.

144.    Defendants' registration and use of the Infringing Domains is intended primarily to capitalize on the goodwill associated with the ALLIED Marks.

145.    Defendants registered, trafficked in, or used the Infringing Domains with bad faith intent to profit from the ALLIED Marks and the associated goodwill of the ALLIED Marks.

146.    The actual and likely confusion resulting from Defendants' use of the Infringing Domains has harmed and continues to harm and dilute the distinctiveness of the ALLIED Marks.

147.    Defendants' registration and use of the Infringing Domains cause consumers to

falsely believe that the Infringing Websites and Defendants' moving and relocation services sold and advertised under and in connection with said website are affiliated with, endorsed, or approved by Allied.

148.    Defendants' acts constitute registration, trafficking, or use of a domain that is identical, confusingly similar, and/or dilutive of plaintiff's trademark rights, with a bad faith intent to profit from that mark, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(d).

149.    Allied has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of Defendants in an amount thus far not determined.

150.    Upon information and belief, Defendants have obtained gains, profits, and advantages as a result of their wrongful acts in an amount thus far not determined.

## FIFTH CAUSE OF ACTION
## INJURY TO BUSINESS REPUTATION AND DILUTION
## FLORIDA § 501.201, ET SEQ.

151.    Allied repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

152.    Allied, on behalf of the general public as well as for itself, seeks recovery from Defendants for violation of Fla. Stat. Ann. § 501.201, et seq.

153.    By virtue of Defendants' unauthorized use of the ALLIED Marks, such use trading on the goodwill associated with Allied and their ALLIED Marks, Defendants have misled and will continue to mislead the public into assuming a connection between Allied and Defendants' moving and relocation services.

154.    By falsely suggesting a connection with or sponsorship by Allied, Defendants are likely to cause and have caused public confusion constituting unfair methods of competition within the meaning of Fla. Stat. Ann. § 501.204.

155.    If such action on the part of Defendants continues, Allied will suffer additional

irreparable harm of a continuing nature for which there is no adequate remedy at law.

156.    Allied has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of Defendants in an amount thus far not determined.

157.    Upon information and belief, Defendants have obtained gains, profits, and advantages as a result of their wrongful acts in an amount thus far not determined.

**SIXTH CAUSE OF ACTION**
**COMMON LAW TRADEMARK INFRINGEMENT**

158.    Allied repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

159.    Defendants' acts previously alleged herein constitute common law trademark infringement.

160.    Allied is without adequate remedy at law, as Defendants' acts have caused Allied irreparable harm to their business reputation, goodwill, and stature in the business community.

161.    Allied is informed and believe and thereon alleges that Defendants committed the above alleged acts oppressively, fraudulently, maliciously and in conscious disregard of Allied's rights, and Allied is therefore entitled to exemplary and punitive damages under the common law of the State of Florida in an amount sufficient to punish, deter and make an example of Defendants.

162.    The advertisement for and sale of the unauthorized and Defendants' moving and relocation services by Defendants are without any permission, license, or other authorization from Allied. The unauthorized moving and relocation services are being advertised and sold in interstate commerce.

163.    Allied has no adequate remedy at law and are suffering irreparable harm and damage as a result of the acts of Defendants in an amount thus far not determined.

164.    Upon information and belief, Defendants have obtained gains, profits, and

advantages as a result of their wrongful acts in an amount thus far not determined.

## SEVENTH CAUSE OF ACTION
## MISAPPROPRIATION AND UNFAIR COMPETITION
## UNDER FLORIDA COMMON LAW

165.    Allied repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

166.    Allied owns protectable common law trademark rights in Florida, in and to the ALLIED Marks.

167.    Upon information and belief, Defendants deliberately and willfully adopted the Asserted Marks with full knowledge of Allied's prior rights in the ALLIED Marks, intending to trade upon Allied's established goodwill and reputation. Defendants' intentional adoption and use of confusingly similar marks was calculated to create a false association in the minds of consumers between Defendants' moving and relocation services and those authorized by or affiliated with Allied, thereby misappropriating the substantial commercial value and consumer recognition of the ALLIED Marks.

168.    Defendants' misappropriation and use of the ALLIED Marks without Allied's consent or authorization to sell and advertise the ALLIED Marks in Florida is likely to cause and has caused confusion and mistake in the minds of the public, leading the public to believe that Defendants' moving and relocation services emanate or originate from Allied, or that Allied has approved, sponsored, or otherwise associated itself with Defendants, which is untrue.

169.    Defendants' acts constitute misappropriation and infringement of Allied trademark rights, goodwill and reputation and unfair competition under the common law of the State of Florida.

## PRAYER FOR RELIEF

WHEREFORE, Allied demands relief against Defendants as follows, requesting that the

Court:

A.  Enter judgment declaring that:

    1.  Allied's Federally Registered Trademarks have been and continue to be infringed by Defendants in violation of 15 U.S.C. § 1114;

    2.  Defendants' use of the ALLIED Marks constitutes federal unfair competition in violation of 15 U.S.C. § 1125;

    3.  Defendants' use of the ALLIED Marks constitutes dilution in violation of 15 U.S.C. § 1125;

    4.  Defendants had a bad faith intent to profit from the ALLIED Marks and Defendants' use of the Infringing Domains constitutes cybersquatting in violation of 15 U.S.C. §1125; and

    5.  Defendants' use of the ALLIED Marks violates Fla. Stat. Ann. § 495.001, et seq., Florida common law trademark infringement, and Florida unfair competition laws.

B.  Issue a preliminary and permanent injunction enjoining and restraining Defendants and their agents, servants, employees, and attorneys and all those in active concert or participation with them, from:

    1.  Using any reproduction, copy, or colorable imitation of Allied's Federally Registered Trademarks to identify any goods or the rendering of any services not authorized by Allied;

    2.  Engaging in any course of conduct likely to cause confusion, deception, or mistake, or to injure Allied's business reputation or dilute the distinctive quality of Allied's names and Allied's Federally Registered Trademarks;

3.      Using a false description or representation including words or other symbols tending to falsely describe or represent Defendants' unauthorized services as being those of Allied or sponsored by or associated with Allied and from offering such false descriptions and/or representations in commerce;

4.      Further infringing Allied's Federally Registered Trademarks by selling, marketing, offering for sale, advertising, or promoting services not authorized by Allied bearing any simulation, reproduction, copy or colorable imitation of Allied's Federally Registered Trademarks;

5.      Using any simulation, reproduction, copy or colorable imitation of Allied's Federally Registered Trademarks in connection with the promotion, advertisement, display, sale, or offering for sale of any unauthorized products or services in such fashion as to relate or connect, or tend to relate or connect, such products or services in any way to Allied, or to any goods or services sold, supplied, distributed, sponsored, or approved by, or connected with Allied, including but not limited to publishing links their respective websites;

6.      Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, sold, or rented by Defendants, or any services distributed, sold, or offered for sale by Defendants, are in any manner associated or connected with Allied, or is sold, manufactured, licensed, sponsored, approved or authorized by Allied;

7.    Constituting an infringement of any of Allied's Federally Registered Trademarks or of Allied rights in, or to use or to exploit, said Registered Trademarks, or constituting any dilution of Allied's name, reputation, or goodwill;

8.    Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized advertisements, marketing materials, products or any books or records that contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or displaying of all unauthorized products and/or services that infringe Allied's Federally Registered Trademarks;

9.    Selling, offering for sale, or advertising any merchandise bearing Allied's Federally Registered Trademarks on the Internet or in e-commerce, including but not limited to all forms of social media; and

10.   Effecting assignments or transfers, forming new entities or associations, or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

C.    Order Defendants to deliver up for destruction to Allied all unauthorized advertisements in their possession or under their control bearing any of Allied's Federally Registered Trademarks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof under 15 U.S.C. §1118.

D.    Order Defendants to transfer the Infringing Domain names to Allied.

E.    Order Defendants to refrain from registering, using, or trafficking in any domain

names or social media or platform user names or handles that are identical or confusingly similar to Allied's Federally Registered Trademarks, including but not limited to names containing Allied's Federally Registered Trademarks and domain names containing misspellings of Allied's Federally Registered Trademarks.

F.      Order Defendants to cooperate with Allied in filing a complaint with the Federal Motor Carrier Safety Administration regarding Defendants' deceptive practices in the household goods moving industry.

G.      Order such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products manufactured, sold, or otherwise circulated or promoted by Defendants, or any services distributed, sold, or offered for sale by Defendants, are authorized by Allied or related in any way to Allied's services.

H.      Order Defendants, within 30 days after the service of judgment upon it, with notice of entry thereof, to file with the Court, and serve upon Allied, a written report under oath setting forth in detail the manner in which Defendants have complied with the above paragraphs.

I.      Award to Allied Defendants' profits from Defendants' unlawful acts herein alleged as Defendants' total sales of moving and relocation services less any elements of cost or deductions proved by Defendants and allowed by law.

J.      Award to Allied the damages from Defendants' unlawful acts herein alleged.

K.      Award to Allied statutory damages of $100,000 for Defendants' violation of 15 U.S.C. § 1125(d)(1) under 15 U.S.C. § 1117(d).

L.      Pursuant to 15 U.S.C. § 1117(a), order Defendants to pay Allied all of the profits assessed above, together with three times the amount of damages assessed above, with prejudgment interest on the foregoing sums.

M.      Order that Allied recover the costs of this action together with reasonable attorneys'

and investigators' fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

N.      Direct that this Court retain jurisdiction of this action for the purpose of enabling

Allied to apply to the Court at any time for such further orders and interpretation or execution of

any order entered in this action, for the modification of any such order, for the enforcement or

compliance therewith and for the punishment of any violations thereof.

O.      Award to Allied such other and further relief as the Court may deem just and proper,

together with the costs and disbursements that Allied has incurred in connection with this action.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Allied hereby demands a trial by jury

of all issues so triable raised by the complaint.

Dated: March 26, 2025            Respectfully submitted,

By:    */s/Samuel Wardle*
Samuel Wardle
Florida Bar No. 105630
**FROST BROWN TODD LLP**
400 W. Market St., Fl. 32
Louisville, KY 40202-3346
Phone: (502) 779-8721
Fax: (502) 581-1087
swardle@fbtlaw.com

OF COUNSEL:
John F. Bennett (seeking pro hac vice admission)
Paul J. Linden (seeking pro hac vice admission)
Derek M. Freitas (seeking pro hac vice admission)
**FROST BROWN TODD LLP**
301 East Fourth Street, Suite 3300
Cincinnati, OH  45202
Phone: (513) 651-6800
Fax: (513) 651-6981
jbennett@fbtlaw.com
plinden@fbtlaw.com
dfreitas@fbtlaw.com